William J. Sullivan, J.
This is a special proceeding instituted by Sands Point Land Company, Inc., a New York corporation, to determine the rights of a dissenting shareholder of said corporation and to fix the fair value of his shares of stock pursuant to section 623 of the Business Corporation Law. The relief prayed for in the petition is as follows: (1) That the court determine whether respondent has complied with the provisions of section 623 of the Business Corporation Law; (2) that the court determine the value of respondent’s stock in accordance with said section 623 and find it to be the price offered by petitioner, or appoint an appraiser to determine such value; and (3) that the court find that the action of respondent in failing to accept the offer made by petitioner was arbitrary and vexatious and not in good faith.
*370 Respondent is the owner of 10 shares of capital stock of the petitioner corporation, having purchased same in 1956 at a price of $100 per share. On December 19,1963 petitioner gave respondent notice of a special meeting of the stockholders of the corporation to be held on December 30, 1963 for the following purposes:
“1. To adopt a plan of complete liquidation of the Corporation pursuant to the Plan of Liquidation attached hereto; to authorize the conveyance, transfer, assignment and delivery of all of the Corporation’s properties and assets to the Sands Point Golf Club, Inc. (‘ Golf Club ’) in exchange for promissory notes of the Golf Club, and the assumption by the Golf Club of all liabilities of the Corporation, as provided in the Plan and in the Purchase Agreement referred to therein and annexed hereto; and authorize any and all action necessary or desirable to effectuate or implement the Plan.
“2. To authorize the liquidation and dissolution of the Corporation as provided in the Plan and the distribution to its stockholders of the promissory notes to be received from the Golf Club pursuant to the Plan and the Purchase Agreement. ” (It is noted that the papers submitted on this motion do not include the Plan and Purchase Agreement referred to in the notice of meeting, nor do they show the amount to be paid by the Golf Club for the assets of Sands Point Land Company, Inc., nor the amount of the promissory notes to be distributed to the stockholders thereof.)
Upon receiving the notice of meeting the respondent by letter dated December 27, 1963 notified petitioner that he objected to the Plan of Liquidation and intended to demand payment for his shares if the proposed action was authorized at the meeting. The Plan of Liquidation was duly voted at the meeting on December 30; the respondent notified petitioner that he dissented from the plan and demanded payment for the “fair value” of his shares; and on February 4, 1964 petitioner wrote to him as follows: ‘ ‘ Please take notice that this corporation hereby makes written offer, pursuant to Section 623 (g) of the Business Corporation Law, to pay you for your stock in cash the sum of $150 per share, which price is considered by the corporation to be the fair value of your shares. ” This offer was rejected by the respondent by letter to the petitioner dated February 11, 1964. Upon the papers herein, this court is of the opinion that the respondent has complied with the requirements of section 623, and that he is entitled to receive payment of the fair value of his stock. Although the court recognizes that petitioner corporation is not actively conducting a profit-making business or *371 commercial enterprise, its principal ‘ ‘ activity ’ ’ being that of landlord under the lease of its property to the golf club, and that the issuance of its stock generally has been accompanied by membership in the golf club corporation, nevertheless the petitioner is a corporation organized under the Stock Corporation Law of the State of New York and as such its dissolution is subject to the provisions of section 623 of the Business Corporation Law. Consequently, if the corporation persists in carrying out its plan of liquidation and dissolution, it is obliged to recognize the rights of dissident stockholders under said statute.
In support of item (2) of the prayer for relief herein, wherein petitioner asks the court to find that the fair value of respondent’s stock is the price offered to him, i.e. $150 per share, the petitioner points out that the certificate of incorporation of Sands Point Land Company, Inc., contains the following provision: “ The shares of stock of this corporation are to be held by each stockholder upon condition that he will not sell, assign, or transfer all or any of such shares without first offering the same for sale to this corporation, and this corporation shall have the right to purchase or to designate the purchaser of same, within sixty days of such offer. The price to be paid for the stock in such event shall be the par value. Appropriate reference to the foregoing condition shall be noted upon all certificates of stock. ”
The par value designated for each share is $100 and the above-quoted provision contained in the corporate charter is set forth in full on the face of the stock certificate issued to the respondent. There is, however, a line drawn through the last sentence, i.e., “ The price to be paid for the stock in such event shall be the par value.” No evidence has been submitted as to the circumstances under which this deletion was made or the time when it took place; but the court deems this to be irrelevant for the purpose of this decision.
It is the contention of the petitioner that the respondent is bound by this restrictive provision, and that it has the right to purchase respondent’s shares at the par value of $100 per share; but that it has offered to pay respondent the sum of $150 per share which price it considers to be the “ fair value ” thereof. It is the opinion of this court, however, that the restriction above set forth does not apply to the facts involved herein and that the respondent is not bound thereby. It is well-settled that restrictions on the sale or transfer of corporate stock, although valid, are strictly construed; and that they apply only to voluntary sales (18 C. J. S., Corporations, § 391; Ann., 2 ALR 2d, pp. 748, 754; Matter of Trilling & Montague, 140 F. Supp. *372 260). The general policy of the courts with respect to restrictive provisions of this kind is summed up as follows (13 Am. Jur., Corporations, § 339.5): “As a broad general principle it may be stated that provisions which restrict a stockholder’s right to sell or transfer his stock, particularly those which require that he give the corporation or the other stockholders first opportunity to purchase stock which he desires to transfer * * * are regarded with disfavor and are strictly construed. Such restrictions generally apply only to voluntary sales and do not apply to judicial sales or other transfers by operation of law or to pledges of stock, and usually are construed to uphold the widest range permissible under the language used. ” As stated in Volume 12, Fletcher’s Cyclopedia of Law of Private Corporations (1957 rev., § 5456, p. 3091) the purpose of shareholders’ agreements restricting the sale of corporate stock is to prevent or discourage sales to outsiders. The restrictive stock agreement is a device to assure “ the succession in interest of persons most likely to act harmoniously with the other shareholders ’ ’. In the instant case this rationale does not apply since there will be no “ succession in interest ” inasmuch as the corporation is ceasing to exist, is winding up its affairs by dissolution and liquidation of assets to its stockholders, as a result of which there will no longer be any stock or stockholders. It is further stated in the Fletcher text (§ 5456, p. 315): “A restriction on the sale of stock owned by a defendant corporation by requiring that such stock should first be offered t'o the plaintiff, does not apply to the distribution by the defendent of stock to its stockholders on dissolution”.
A specific application of the above principle to a factual situation which involved a distribution of stock upon the dissolution of a corporation, as distinguished from a sale, is found in E. I. du Pont de Nemours & Co., v. Pathe Film Corp. (25 F. Supp. 850 [U. S. Dist. Ct., S. D. N. Y.]). In that case the court construed an agreement between the plaintiff and the defendant which contained a provision whereby defendant Pathe Film Corporation had agreed that none of the shares of du Pont Film Manufacturing Corporation owned by it “shall hereafter be sold unless and until any of such shares to be sold shall first be offered to E. I. Du Pont De Nemours & Company at the best price and upon the best terms obtainable at the time from any other bona fide purchaser for value.” Pathe Film Corporation voted to dissolve and distribute its assets among its stockholders; and as part of the dissolution proceeding, voted to transfer the shares of du Pont Film owned by it to a banking institution which would issue certificates of beneficial interest to be dis *373 tributed to Pathe’s stockholders. E. I. du Pont de Nemours & Company, Inc., instituted action to enjoin such distribution of du Pont Film stock as being in violation of the afore-mentioned restrictive provision. The court expressly held that the distribution of the du Pont Film stock was not a sale within the meaning of the restrictive agreement; and in the course of its opinion stated as follows (p. 851): “ This is not a sale but merely a distribution by operation of law to the persons who are the ‘ proprietors of the corporate interests ’. * * * the very language of the restriction precludes any construction that it covers a distribution on dissolution, for it provides that the stock shall first be offered to the plaintiff 1 at the best price and upon the best terms obtainable at the time from any other bona fide purchaser for value ’. Obviously, such a provision as this has no application to a distribution on dissolution. ” Similarly, in the instant case there is no sale of the respondent’s stock as contemplated by the language of the restrictive provision. Respondent has made no offer to sell his stock, apparently being content to continue as a shareholder in the corporation; but the corporation by its vote to dissolve and liquidate, is canceling the stock of respondent and all other shareholders and offering a portion of its assets in payment therefor. The transaction whereby the petitioner corporation is going out of business by dissolution, and liquidating its assets by transferring same to another corporation, and planning to distribute the value of said assets in the form of promissory notes issued by the transferee corporation, in essence constitutes a redemption of the shares of stock held by its shareholders and not a purchase thereof. To hold that such a transaction requires a dissenting stockholder to be bound by the restrictive provision and to compel him to offer his stock for sale in accordance with the limitations of such provision would be to nullify the provisions of section 623 and the protection afforded thereunder to a dissenting stockholder.
Accordingly, the court determines herewith that the respondent is entitled to have the fair value of his stock fixed pursuant to the provisions of section 623.
The court cannot determine on the papers submitted on the application whether the offer of $150 per share made by petitioner represents the “fair value” of such stock; nor whether respondent’s refusal to accept same was arbitrary or otherwise not in good faith. A determination of such value will necessarily involve an appraisal of the real property now owned by the petitioner corporation. Such appraisal will involve many factors, including the effect of the lease held by the golf club. The *374 court, therefore, deems it necessary for a proper adjudication of this proceeding to appoint an appraiser to receive evidence and recommend a decision on the question of fair value, pursuant to section 623 (subd. [h], par. [4]) of the Business Corporation Law.