*911 OPINION OF THE COURT
Dianne T. Renwick, J.
A shareholder in several closely-held corporations commenced this special proceeding seeking dissolution of the corporations. Nonpetitioning shareholders invoked their right to purchase the petitioner’s shares. Following conclusion of the reference to determine, inter alia, the value of petitioner’s shares, petitioner moves, pursuant to CPLR 4403, to confirm in part and reject in part the Special Referee’s report, and for other relief. Respondents also move to confirm in part and reject in part the Special Referee’s report. The motions are consolidated for joint disposition.
Factual and Procedural Background
Petitioner Wendie Markman commenced this special proceeding seeking, pursuant to Business Corporation Law § 1104-a, the dissolution of three closely-held corporations named Exterior Delite, Inc., Marbledale Properties, Inc., and Starl Properties, Inc. Exterior Delite, Inc.’s primary asset is a supermarket operating from the premises located at 2880 Exterior Street, Bronx, New York. Marbledale Properties, Inc. owns the land and building located at 2880 Exterior Street. Starl Properties, Inc. owns the adjacent property located at 2864 Exterior Street.
In the petition, Wendie Markman claims that she owns shares in these three closely-held corporations. Petitioner also claims that the directors and others in control of the corporations have engaged in illegal, fraudulent and oppressive actions toward petitioner/shareholder, and that the corporate property is being looted, wasted and diverted by the directors or others in control of the corporations. In their answer, respondents Steven and Arleene Kleinman concede petitioner’s 50% ownership of the shares in Exterior Delite, Inc. and Marbledale Properties, Inc. Respondents also claim 50% ownership in the shares of Exterior Delite, Inc. and Marbledale Properties, Inc. They, however, deny that petitioner owns any shares of Starl Properties, Inc., and claim that those shares are owned solely by Steven Kleinman. The three closely-held corporations are currently managed by director/shareholder Steven Kleinman.
Respondents timely elected, pursuant to Business Corporation Law § 1118, to purchase petitioner’s shares of Exterior Delite, Inc. and Marbledale Properties, Inc. The parties, however, were unable to agree upon a price of those shares. Instead, the *912 parties stipulated to submit to a Special Referee the issue of the value of petitioner’s shares in Exterior Delite, Inc. and Marbledale Properties, Inc., as well as whether petitioner owns any shares in Starl Properties, Inc., and, if so, the value of such shares.
Judicial Hearing Officer Richard O. Tolchin was appointed the Special Referee for the Business Corporation Law § 1118 proceedings. After holding a four-day hearing, the Special Referee found that petitioner owns 50% of the outstanding shares in Starl Properties, Inc. The Special Referee also found that the fair market value of the shares in Exterior Delite, Inc. was $307,000, as of February 27, 2005. The Special Referee also found that the fair market value of the shares in Marbledale Properties, Inc. was $3.01 million as of February 27, 2005.
Petitioner Wendie Markman now moves, pursuant to CPLR 4403, for a court order confirming in part and rejecting in part the report of the Special Referee. Petitioner seeks confirmation of the Special Referee’s determination that petitioner owns 50% of the outstanding shares in Starl Properties, Inc. Petitioner also seeks a rejection of the Special Referee’s determination of the fair market value of the shares in Exterior Delite, Inc. and Marbledale Properties, Inc. Specifically, petitioner claims that the Special Referee erred in failing to adjust the stock valuation of the shares of Exterior Delite, Inc. by the alleged misappropriation of corporate funds; it is claimed that director/shareholder Steven Kleinman siphoned corporate funds for personal use by, over a period of several years, buying a life insurance policy for his wife ($300,000), renting a luxury car ($92,232), and approving for himself excessive salaries ($1.1 million). In addition, petitioner argues that the Special Referee erred in the stock valuation of Marbledale Properties, Inc. by refusing to take into account the company’s cash in the form of a certificate of deposit in the amount of $336,427 at Ponce DeLeon Bank.
Respondents also move, pursuant to CPLR 4403, for a court order confirming in part and rejecting in part, for different reasons, the report of the Special Referee. Respondents seek confirmation of the Special Referee’s determination of the fair market value of the shares in Exterior Delite, Inc. and Marbledale Properties, Inc. Respondents seek rejection of the Special Referee’s determination that petitioner owned 50% of the outstanding shares in Starl Properties, Inc.
*913 Discussion
Business Corporation Law § 1104-a provides that the holders of 20% or more of the outstanding shares of a closely-held corporation have the right to petition for a judicial dissolution under certain “special circumstances.” (Business Corporation Law § 1104-a [a].) The specified circumstances are (1) where the directors or those in control of the corporation have been found guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders, or (2) where the property or assets of the corporation are being looted, wasted or diverted for noncorporate purposes by the controlling faction. (Business Corporation Law § 1104-a [a] [1], [2].) Before dissolution is ordered on either of these grounds, a court is required to consider whether liquidation of the corporation is the only feasible means whereby petitioning shareholders may obtain a fair return on their investment, and whether it is reasonably necessary to protect the rights and interests of a substantial number of shareholders. (Business Corporation Law § 1104-a [b] [1], [2].)
Simultaneously, the Legislature enacted Business Corporation Law § 1118 as a “defensive mechanism” for the nonpetitioning shareholders. (Matter of Pace Photographers [Rosen], 71 NY2d 737, 744 [1988].) Business Corporation Law § 1118 (a) provides the nonpetitioning shareholders with “an absolute right to avoid the dissolution proceedings and any possibility of the company’s liquidation by electing to purchase petitioner’s shares at their fair market value and upon terms and conditions approved by the court.” (Matter of Pace Photographers [Rosen], supra at 744-745.) If the purchasing shareholders and the corporation are unable to agree with the petitioner upon the fair market value of the shares, the court, upon the application of the prospective purchasers or the petitioner, may determine the fair market value of the petitioner’s shares as of the day prior to the date on which the petition was filed, exclusive of any element of value arising from such filing, but giving effect to any adjustment or surcharge found to be appropriate in the proceeding. (Business Corporation Law § 1118 [b]; see also, Matter of Public Relations Aids, 109 AD2d 502 [1st Dept 1985]; Matter of Cristo Bros., 97 AD2d 274 [3d Dept 1983].)
Here, upon election by respondents to buy the shares of the shareholder seeking dissolution of the closely-held corporations, the central question became one of valuation under Business Corporation Law § 1118, which was resolved by Special Referee *914 Richard O. Tolchin. CPLR 4403 governs those motions to either confirm and/or reject the report and recommendations made by the Special Referee. Where there are questions of fact heard by the Special Referee, the Special Referee must recommend how to determine the issues presented, as well as how to resolve conflicting testimony and matters of credibility. (Kaplan v Einy, 209 AD2d 248 [1st Dept 1994].) As a general rule, the court should not disturb the Special Referee’s findings and the report should be confirmed if the findings are supported by the record and if he or she has clearly defined the issues, and resolved matters of credibility. (Board of Mgrs. of Boro Park Vil.-Phase I Condominium v Boro Park Townhouse Assoc., 284 AD2d 237 [1st Dept 2001]; Frater v Lavine, 229 AD2d 564 [2d Dept 1996]; Freedman v Freedman, 211 AD2d 580 [1st Dept 1995].)
A.
The Special Referee’s Valuation of the Value of the Shares of Exterior Delite, Inc.
The court first examines petitioner’s challenge to the Special Referee’s findings of the fair market value of the shares of Exterior Delite, Inc. Petitioner does not challenge the methodology adopted by the Special Referee. Indeed, petitioner presented no expert to refute the valuation made by respondents’ expert Stephen Shulman, a CPA, who relied upon an investment value method of valuation based upon the capitalization of excess earnings via a cash flow analysis.[1] The Special Referee accepted respondents’ expert’s valuation as based upon recognized criteria and the facts of the case, albeit with slight variations.[2] Rather, petitioner’s argument is essentially legal: that the Special Referee erred by holding that the allegations of misappropriation of corporate funds pleaded in the petition were foreign to the proper valuation of the petitioner’s shares. The Special Referee took the incongruous step of taking evidence of *915 the alleged misconduct, but concomitantly rejecting the evidence as irrelevant. The Special Referee took the position that a petitioner must commence a derivative action to keep alive a claim of misappropriation.
It is respectfully submitted that the Special Referee’s determination — holding that the allegations of misappropriation of corporate funds pleaded in the petition were foreign to the proper valuation of the petitioner’s shares — cannot be granted this court’s imprimatur. The Special Referee’s erroneous determination arises from a fundamental misconception of the interplay between Business Corporation Law §§ 1104-a and 1118. Of course, once the nonpetitioning shareholder and/or the corporation avoid dissolution by timely electing to purchase the petitioner’s shares, it is unnecessary for the court to make findings on the issue of inappropriate action. Upon the respondents’ election, the question becomes simply one of valuation under Business Corporation Law § 1118, not liquidation under Business Corporation Law § 1104-a; the dissolution is, therefore, stayed and, like in this case, if the parties are unable to agree on a price, a hearing is held to determine only the fair market value of the stock. (Business Corporation Law § 1118 [b]; see Matter of Public Relations Aids, supra; Matter of Cristo Bros., supra.)
What the Special Referee has failed to realize, is that the alleged wrongdoing of misappropriation of corporate assets may play a role in the valuation determination. The allegations of misconduct are relevant if any alleged misconduct by those in control of the corporation has had an adverse impact upon the corporation’s value. (See e.g., Matter of Cristo Bros., 97 AD2d 274 [3d Dept 1983].) Indeed, Business Corporation Law § 1118 expressly provides that any adjustment or surcharge found to be appropriate in the Business Corporation Law § 1104-a proceeding shall be given effect. Such an adjustment to stock value may be ordered by the court in a Business Corporation Law § 1104-a proceeding upon a finding of willful or reckless dissipation or transfer of assets or corporate property without adequate compensation therefor. (See Business Corporation Law § 1104-a [d].) Similarly, courts have consistently held that the receipt of excessive compensation by a shareholder/director has been held to be a proper ground for adjustment of stock value. (See e.g., Matter of Walt’s Submarine Sandwiches [Basile], 173 AD2d 980 [3d Dept 1991]; Matter of Raskin v Walter Karl, Inc., 129 AD2d 642 [2d Dept 1987].)
*916 This court’s conclusion — that the allegations of misappropriation of corporate funds pleaded in the petition are relevant to the proper valuation of petitioner’s shares under Business Corporation Law § 1118 — is buttressed by the fact that the exercise of an option to buy pursuant to Business Corporation Law § 1118 does not preclude a derivative claim of corporate waste and looting. As the courts have reasoned, to preclude a shareholder from pursuing a derivative action, which, if successful, would enhance the corporations’ assets and the shareholder’s proportionate interest therein, would be to reward the alleged wrongdoers in control of the corporation by permitting them to involuntarily silence, and economically injure, a minority stockholder who seeks redress on behalf of the corporation for that wrongdoing. (See, Slade v Endervelt, 174 AD2d 389 [1st Dept 1991].) As a result, case law uniformly holds that even separate proceedings involving misappropriation of corporate assets should be consolidated into the Business Corporation Law § 1118 proceeding, because the issue in a misappropriation proceeding is “intertwined with the determination of ‘fair value’ of petitioner’s shares.” (See e.g., Matter of Tosca Brick Oven Bread [Lubena], 243 AD2d 416, 416 [1st Dept 1997]; Edmonds v Amnews Corp., 224 AD2d 358 [1st Dept 1996]; Slade v Endervelt, 174 AD2d 389 [1st Dept 1991]; Matter of Davis [Shayne-Levy Assoc.], 174 AD2d 449 [1st Dept 1991]; Matter of Gerzof v Coons, 168 AD2d 619 [2d Dept 1990]; Matter of Imbriale v Imbriale, 144 AD2d 557 [2d Dept 1988].)
Since a dissolution action, turned into an option to buy, may be joined with a derivative claim of misappropriation, it logically follows that such claim of misappropriation is not obviated by the election to purchase petitioner’s shares pursuant to Business Corporation Law § 1118. In that setting, to force a petitioner to commence a derivative action to keep alive a claim of misappropriation, as suggested by the Special Referee, rather than just raising it in a petition for dissolution pursuant to Business Corporation Law § 1104-a, serves no other purpose other than to waste judicial resources. Nor can it be said that allowing a claim of corporate misappropriation in a Business Corporation Law § 1118 proceeding injects any element of uncertainty to the continued operation of the enterprise. Thus, this court’s reading of Business Corporation Law § 1118 is supported by sound policy considerations, as well as the plain language of the statute.
*917 Respondent’s reliance on Matter of Pace Photographers (Rosen) (71 NY2d 737 [1988]) is misplaced. Contrary to respondent’s allegations, the rule articulated in Matter of Pace Photographers (supra) applies when a Business Corporation Law § 1104-a petition is brought solely under subdivision (a) (1), i.e., that the “directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders.” As noted above, such claims are irrelevant in a Business Corporation Law § 1118 proceeding, where fixing blame is immaterial once the respondent shareholders have elected to buy the petitioner’s shares. In this case, however, petitioner sought a dissolution on the additional ground that the director/shareholder had engaged in the misappropriation of funds. The Special Referee, therefore, had no legitimate basis to refuse to address petitioner’s claim that respondent Steven Kleinman had engaged in the misappropriation of funds.
Nor can it be seriously argued that the alleged misappropriation of corporate funds, if proven, did not have a detrimental effect on the corporation’s value. As noted above, the method of computing the fair market value of the corporate shares of Exterior Delite, Inc. was the investment value method, which views the company purely as an investment. That is, it estimates what a prudent and informed investor would be willing to pay in order to buy the entire business as an ongoing entity, considering its assets, liabilities, tangibles and intangibles. (Matter of Blake v Blake Agency, 107 AD2d 139 [2d Dept 1985].) It requires estimating a level of future earnings based on the historical performance and prospects for the future, and applying an appropriate capitalization rate to convert the expected future earnings into a present value. (Id.; see also, Matter of Taines v Barry One Hour Photo Process, 123 Misc 2d 529 [Sup Ct, NY County 1983].) Thus, in order to truly reflect the company’s earning power, the net income should have been adjusted by eliminating from the corporate expenses a portion of the officer/shareholder’s salary that is considered excess compensation and the unauthorized purchase of a personal life insurance policy and rental of a luxury car. (Cf., Matter of Walt’s Submarine Sandwiches [Basile], 173 AD2d 980 [3d Dept 1991]; Matter of Raskin v Walter Karl, Inc., 129 AD2d 642 [2d Dept 1987].)
*918 B.
The Special Referee’s Valuation of the Value of the Shares of Marbledale Properties, Inc.
The court next examines petitioner’s argument that the Special Referee erred in the stock valuation of Marbledale Properties, Inc., by failing to take into account the company’s cash, as reflected in a certificate of deposit with Ponce DeLeon Bank in the amount of $336,427. In his valuation of the fair market value of the shares in Marbledale Properties, Inc., the Special Referee rejected petitioner’s expert’s earnings based on valuation analysis. Instead, the Special Referee found that respondents’ expert’s sales comparison approach was more reliable in light of the fact that the closely-held corporation’s only assets were two pieces of real estate, a building occupied by the supermarket run by Exterior Delite, Inc., and a large vacant lot, all located in a commercial zone. Assigning a value of $20 per square foot to the vacant land, with a 10% discount for topographical deficiencies, and a value of $75 per square foot to the building, the Special Referee found Marbledale’s fair market value as $3.01 million.
While neither petitioner nor this court has any qualms with the Special Referee’s determination that the sales comparison approach was the more reliable method of analysis vis-a-vis petitioner’s expert’s earnings-based valuation, this court cannot concur with the Referee’s determination to refuse to adjust the stock valuation of Marbledale Properties, Inc., by adding the company’s cash (as reflected in a certificate of deposit in the amount of $336,427). Stocks of closely-held corporations cannot reasonably be valued by application of any inflexible approach; it must be tailored to the particular circumstances. (Amodio v Amodio, 70 NY2d 5 [1987].) This can be done only after a consideration of all relevant facts and circumstances bearing upon the stock’s value. (Id.; see also, Matter of Friedman v Beway Realty Corp., 87 NY2d 161 [1995]; Matter of Pace Photographers (Rosen), 71 NY2d 737 [1988].) It is of course true that part of a company’s cash is needed to fund its ongoing operations. However, the balance of cash is “excess” that, viewed through the prism of a reasonable and objective observer, would enhance the value of a closely-held corporation. Since there is no claim by respondents that the certificate of deposit constitutes working capital, the account should have been used to enhance the value of Marbledale Properties, Inc.
*919 C.
The Special Referee’s Determination of the Ownership of Shares of Starl Properties, Inc.
The court next examines the motion by respondents seeking to strike that part of the Special Referee’s report finding petitioner 50% owner of the shares in Starl Properties, Inc. The court will not disturb the Special Referee’s findings on this issue since they are supported by the record and based primarily on issues of credibility resolved by the Special Referee. Specifically, the Special Referee found petitioner 50% owner of the shares in Starl Properties based on the documentary evidence, primarily the corporate tax returns, and the rejection, as unreliable, of the testimony of respondent Steven Kleinman, who was a director/shareholder of Starl Properties, Inc.
Contrary to respondent’s allegations, Hunt v Hunt (222 AD2d 759 [3d Dept 1995]) does not mandate a different result. In Hunt (supra), the defendant was the president and the plaintiff was the vice-president of a corporation named Hunt Brothers Contractors, Inc. The plaintiff claimed that he was 50% owner of the shares of the corporation. The appellate court held that, since no certificate of stocks had been issued by the corporation, the trial court properly examined other evidence to determine the validity of the plaintiffs claim. The trial court, acting as a trier of fact, found that the plaintiff failed to prove by a preponderance of the evidence that he was 50% owner of the corporation. In Hunt, the defendant conducted virtually all of the corporation’s business, the plaintiff did not contribute any money to the corporation, and plaintiff on several occasions admitted that he had no ownership interest in the corporation. As to the inclusion of the plaintiff as an owner in numerous tax returns, the trial court found that the corporation’s accountant who prepared the tax return provided an acceptable explanation that such inclusion had been an error that was corrected in subsequent tax returns. Upon review of the evidence, with a recognition that the trial court’s “conclusion rested largely on considerations relating to the credibility of the witnesses,” the appellate court held that a reversal or modification was not warranted. (Hunt v Hunt, supra at 761.)
In this case, the facts are clearly distinguishable from those in Hunt v Hunt (222 AD2d 759 [3d Dept 1995]). For instance, there is no evidence that plaintiff ever admitted that she had no ownership interest in Starl Properties, Inc. In addition, the ac *920 countant who prepared the tax returns for Starl Properties never testified that the inclusion of petitioner in the corporate tax returns was an error. On the contrary, the accountant testified that he assumed that this was accurate as it was done at the behest of director/shareholder Steven Kleinman. The Special Referee rejected as incredible the explanation provided by Steven Kleinman that he had included petitioner as an owner in anticipation of her purchasing shares, which never occurred. Nor did the Special Referee find credible the claim by respondent Steven Kleinman that he alone purchased the assets of the corporation. Under the circumstances, the Special Referee found that petitioner had met her burden of establishing by a preponderance of the evidence that she was an owner of 50% of the shares in Starl Properties, Inc. Since the Special Referee’s findings on this issue are supported by the record and based primarily on issues of credibility resolved by the Special Referee, his findings will not be disturbed by this court.
Conclusion
In short, this court acknowledges the Special Referee’s extraordinary performance in this proceeding, by taking evidence for four days, judiciously evaluating the voluminous documents adduced at the hearing, and carefully analyzing the expert’s opinion and the lay witness’ credibility. This court essentially adopts and confirms the Special Referee’s recommendations. Nevertheless, this court must make some slight variations. It confirms that part of the Special Referee’s report and recommendation finding petitioner 50% owner of the shares of the corporation Starl Properties, Inc. It also confirms the Special Referee’s report and recommendations as to the value of the shares of Marbledale Properties, Inc. to the extent of adding $336,427.23 to the value found by the Special Referee. This court, however, refers to the Special Referee the issue of whether respondent Steven Kleinman engaged in the misappropriation of funds of the corporation Exterior Delite, and, if so, adding the misappropriation to the value found by the Special Referee. This court also refers to the Special Referee the issue of the value of the shares of Starl Properties, Inc.
For the foregoing reasons, it is hereby ordered that respondents’ cross motion seeking to confirm that part of the Special Referee’s report and recommendations finding the value of the shares of Exterior Delite, Inc. and Marbledale Properties, Inc. is denied; it is further ordered that respondents’ cross motion *921 seeking to vacate that part of the Special Referee’s report and recommendation finding petitioner 50% owner of the shares of the corporation Starl Properties is denied; it is further ordered that petitioner’s motion seeking to confirm that part of the Special Referee’s report and recommendation finding petitioner 50% owner of the shares of the corporation Starl Properties, Inc. is granted on that issue; it is further ordered that petitioner’s motion seeking to correct and vacate the Special Referee’s report and recommendations finding the value of the shares of Marbledale Properties, Inc. is granted on that issue to the extent of confirming the report and adding $336,427.23 to the value found by the Special Referee; it is further ordered that petitioner’s motion seeking to correct and vacate that part of the Special Referee’s report and recommendations finding the value of the shares of Exterior Delite, Inc. is granted on that issue to the extent of referring to Special Referee Richard O. Tolchin the issue of whether respondent Steven Kleinman engaged in the misappropriation of funds of the corporation Exterior Delite, and, upon receipt of the report and recommendations from the Special Referee on such issue, a motion shall be made to this court pursuant to CPLR 4403 to confirm or reject such report and recommendations; it is further ordered that the issue of the value of the shares of Starl Properties, Inc. is referred to Special Referee Richard O. Tolchin to hear and report with recommendations, and upon receipt of the report and recommendations from the Special Referee, a motion shall be made to this court pursuant to CPLR 4403 to confirm or reject such report and recommendations; and it is further ordered that payment of the amounts owing for petitioner’s shares in Marbledale Properties, Inc. is held in abeyance pending receipt of the report and recommendations of the Special Referee and a motion pursuant to CPLR 4403 with regard to Exterior Delite and Starl Properties.

. The investment value method estimates what a prudent and informed investor would be willing to pay in order to buy the entire business as an ongoing entity, considering its assets, liabilities, tangibles and intangibles. (Matter of Blake v Blake Agency, 107 AD2d 139 [2d Dept 1985].) It requires estimating a level of future earnings based on the historical performance and prospects for the future, and applying an appropriate capitalization rate to convert the expected future earnings into a present value. (Id.; see also, Matter of Taines v Barry One Hour Photo Process, 123 Misc 2d 529 [Sup Ct, NY County 1983].)

. The Special Referee applied a 10% “marketability discount,” rather than the 20% proposed by respondents’ expert.