■ In the Matter of DAVID E. DONIGER et al., Appellants, v RYE PSYCHIATRIC HOSPITAL CENTER, INC., et al., Respondents.— In a proceeding for a judicial dissolution of Rye Psychiatric Hospital Center, Inc., pursuant to Business Corporation Law § 1104 (a), the petitioners appeal from a judgment of the Supreme Court, Westchester County (Beisheim, J.), entered April 23, 1985, which dismissed the proceeding and awarded the respondents Schoenholtz, Essman and Pagliaro specific performance of a shareholders' agreement whereby each petitioner is to transfer his shares of stock in Rye Psychiatric Hospital Center, Inc., to them for a purchase price of $219,-804.

Judgment affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

Rye Psychiatric Hospital Center, Inc. (hereinafter the hospital) is a New York corporation which owns and operates a private psychiatric facility in the City of Rye. That facility has operated since 1928. The respondents Jack C. Schoenholtz and Salvatore J. Pagliaro, both psychiatrists, and the respondent Leonard J. Essman, a medical doctor, are each directors of the hospital. Although at the time they instituted the instant

proceeding the petitioners Alexander Carlen, a psychiatrist, David E. Doniger, a psychiatrist, and I. Jay Lauer, a dentist, were also directors of the hospital, it has since been held in a related proceeding that they no longer are directors and that they have not had that status since November 12, 1982 (see, Matter of Rye Psychiatric Hosp. Center v Schoenholtz, 66 NY2d 333). Each of the petitioners and individual respondents is the owner of one sixth of the hospital's outstanding voting shares.

Following the hospital's incorporation in October 1973 the petitioners and the individual respondents, with the exception of Essman, entered into a shareholders' agreement. In July 1978 a new shareholders' agreement was entered into by the petitioners and individual respondents upon Essman's purchase of a one-sixth interest in the corporation. The agreement provided, inter alia, for restrictions on the passage or disposition of the hospital's common shares.

In 1979, the hospital established the respondents Rye Psychiatric Hospital Center, Inc. Retirement Income Funds, Fixed and Variable (hereinafter the funds) pursuant to the Employee Retirement Income Security Act (hereinafter ERISA). In 1981, the hospital authorized and issued 119,592 shares of convertible, nonvoting preferred stock to the two funds.

Starting in 1982, the parties commenced various actions and proceedings against one another, including a shareholders' derivative action brought by the petitioners, a proceeding to void an election of directors and officers, an action in Federal court claiming that the petitioners had violated their fiduciary duties to the funds, and an action charging the petitioners with failing and refusing to attend meetings of the board of directors since November 1981.

In May 1983 the petitioners attempted to sell the hospital. A written offer was transmitted to Dr. Lauer from a group of four individuals to purchase the hospital for $4,000,000. In a subsequent offer by letter dated June 1, 1983, those individuals offered $4,000,000 for the hospital's assets.

In December 1983 the petitioners commenced the instant proceeding seeking, inter alia, dissolution of the hospital pursuant to Business Corporation Law § 1104, as well as the appointment of a receiver of the corporation's property. The petition was based upon Business Corporation Law § 1104 (a) (1) and (3). The petitioners claimed that a deadlock of the board of directors and internal dissension among the shareholders was such that dissolution would be beneficial to the shareholders.

By letters dated December 7, 1983, the individual respondents informed the petitioners that they considered the institution of the proceeding for dissolution as constituting a proposed "passage or disposition of shares" within the meaning of the shareholders' agreement dated July 3, 1978, and that the petitioners were therefore required to make an offer of their shares to the other shareholders. Not having done so, the individual respondents treated the commencement of the proceedings as an offer by the petitioners to sell their shares and notified them of their acceptance.

The petitioners then moved to restrain the individual respondents from purchasing their shares pursuant to the shareholders' agreement. They obtained a temporary stay of the purchase.

The hospital and individual respondents then counterclaimed for specific performance of the shareholders' agreement, claiming that the commencement of the dissolution proceeding constituted a proposed passage or disposition of shares so as to require each of the petitioners to offer to sell his shares to the individual respondents for $219,106.12, this amount allegedly being approximately $40,000 more than each petitioner's equity and at least four times the maximum amount available for distribution if the assets of the hospital were liquidated. The hospital employees and medical staff also opposed dissolution, as did the funds.

By order entered March 21, 1984, the Supreme Court, Westchester County (Beisheim, J.), dismissed the proceeding without prejudice to renew after resolution of a matter before this court as well as resolution of pending litigation among shareholders as to mismanagement. The counterclaim for specific performance was similarly denied without prejudice to renew and the motion to restrain the individual respondents from purchasing the petitioners' shares of stock was denied as moot.

The petitioners moved to renew, based on allegedly new proof, consisting of, *inter alia,* testimony of the individual respondents in the Federal action concerning the petitioners' alleged breach of fiduciary duties to the funds. The motion, characterized by Special Term as a motion for reargument, was granted by an order entered July 5, 1984, and upon reargument, a hearing was granted on the issue of whether the shareholders' agreement was intended by the parties to apply to the instant situation.

After a hearing, the hearing court held that the respondents

were "entitled to judgment as sought in their counterclaim directing the petitioners to turn over to the respondents their shares in the corporation upon payment of the price as computed under paragraphs 6 and 7 of the shareholders agreement". In its decision, the court noted that, although it had granted the petitioners a hearing to enable them "to prove, if they could, that the all encompassing language of paragraph 4 of the agreement did not cover or embrace the situation where the common stock was to be transferred or disposed of by a corporate dissolution", the hearing was unnecessary.

We conclude that the petitioners' commencement of this proceeding for the judicial dissolution of the hospital triggered the buy-out provisions of the subject shareholders' agreement, and, therefore, the judgment must be affirmed. Paragraphs 1 and 4 of that agreement provide, respectively, as follows:

"1. *Restriction of Shares.* None of the 'shares' as defined below shall pass or be disposed of in any manner whatsoever to any person, partnership or corporation, without being offered in the manner herein provided to each of the Shareholders then holding shares and then living. Until the termination of this Agreement, each share shall remain subject to this Agreement even though an offer or offers are made under this Agreement, but not accepted, and each corporation (including the Corporation), partnership, and person who now holds or may acquire any of the shares in any manner, shall nevertheless hold such shares subject to the requirement that they shall be offered under this Agreement whenever, and as often as, any of the events mentioned in paragraph 4 may occur * * *

"4. *Requirement of Offer.* An offer shall be made not less than sixty (60) days prior to any proposed passage or disposition of shares whatsoever, including but not limited to passage or disposition by sale, delivery, assignment, gift, exchange, transfer, distribution by any executor or administrator, or distribution by a trustee. In case of death of any person owning shares in the Corporation, his executor or administrator shall make an offer not less than sixty (60) days prior to any distribution, passage, or disposition of shares, but in any event within two (2) years after the day of death. In case of the passage or disposition of shares in any voluntary or involuntary manner whatsoever, including but not limited to passage or disposition in the manners mentioned above as well as under judicial order, legal process, execution, attachment, enforcement of a pledge, trust, or encumbrance, or sale

under any of them, the purchaser or one to whom the shares pass or are disposed of shall make an offer within thirty (30) days after such passage or disposition, if an offer had not previously been made in connection with that passage or disposition".

We agree with the hearing court that the key to resolution of this proceeding is the meaning of the sentences set forth in paragraph 4 of the shareholders' agreement. The language of paragraph 4, that the shares must be offered following "any proposed passage or disposition of shares whatsoever, *including but not limited to* * * * sale, delivery, assignment, gift, exchange, transfer [or] distribution" (emphasis added), negates any inference that the parties intended to exclude any possible method whereby their ownership interests would be affected, including a proceeding for judicial dissolution. The examples following the quoted language are illustrative only and do not limit the broad scope of the terms employed *(see, Matter of Farrell v Board of Zoning & Appeals,* 77 AD2d 875, 877). The word "including," when followed by a list of examples, is designed to broaden the concept being defined *(see, Red Hook Cold Stor. Co. v Department of Labor,* 295 NY 1, 8).

We find that language of the agreement unambiguous and clear on its face *(see, Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157), and, therefore, need not resort to parol evidence as to the intention of the parties; effect must be given to the intent of the parties as indicated by the words used *(see, Matter of Western Union Tel. Co. [American Communications Assn.],* 299 NY 177, 184). As the hearing court correctly pointed out (in searching for the probable intent of the parties), words used must be given their fair and reasonable meaning *(see, Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555). The intent of the parties to a contract is presumably expressed by the natural and ordinary meaning of the language employed by them, and such meaning cannot be prevented or destroyed by the courts through construction *(Gans v Aetna Life Ins. Co.,* 214 NY 326, 330). For this court to now find that the parties did not intend to consider a proceeding for judicial dissolution as one of the means by which the buyout provisions of paragraph 4 would be triggered would be to destroy the fair meaning of their words.

Our opinion would be unchanged even were we to believe that the language of paragraph 4 is ambiguous. There is no question that in construing the provisions of a contract, ascertainment of the parties' intention is paramount and due consideration must be given to their purpose in entering into

the contract *(Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157, *supra).* Thus, if the language were not free from ambiguity, its interpretation would depend on the sense the words were used in view of the subject matter, the relationship of the parties, and the surrounding circumstances; a hearing might then be viewed as appropriate to ascertain the intent of the parties *(see, Lachs v Fidelity & Cas. Co.,* 306 NY 357, 364, *rearg denied* 306 NY 941). Gleaning such intent from the hearing testimony at bar provides an even stronger argument against the petitioners' position.

We agree with the hearing court that a review of that testimony yields the conclusion that the purpose of the parties in entering into the shareholders' agreement was to be able "to continue operation of the hospital under the ownership of the six shareholders, or those of them that desired to do so". The hearing court noted the testimony of the petitioners, whom it regarded as "very intelligent men", that they had no "knowledge whatsoever as to what was meant by a dissolution of a corporation, or of having given any thought to it when they signed the shareholders agreement". Thus, we are in complete accord with the court's statement that "[i]f these gentlemen were completely ignorant of the concept of a corporation dissolution, even in the most general sense, they could not have had any intention to exclude disposition of shares by dissolution from the all-inclusive language of paragraph 4 of the shareholders agreement".

The conclusion to be drawn is that the court correctly dismissed the proceeding and granted the counterclaim of the individual respondents for specific performance of the shareholders' agreement such that the petitioners were directed to transfer their shares in the corporation to the individual respondents. We further find that the court did not err in setting forth the price to be paid to each petitioner for his shares at $219,804. The individual respondents adequately demonstrated the basis of their calculations of this amount, which calculations were made pursuant to paragraph 6 of the shareholders' agreement. Gibbons, J. P., Thompson, Niehoff and Rubin, JJ., concur.