[949 NYS2d 356]

John M. Ferolito et al., Appellants, v Domenick J. Vultaggio et al., Respondents. (And Other Actions.)

In the Matter of John M. Ferolito, Appellant.

First Department, July 24, 2012

20

**APPEARANCES OF COUNSEL**

*Boies, Schiller & Flexner LLP*, New York City (*David A. Barrett, Nicholas A. Gavante, Jr.* and *Helen M. Maher* of counsel), for appellants.

*Cadwalader, Wickersham & Taft LLP*, New York City (*Louis M. Solomon, Colin A. Underwood* and *Michael S. Lazaroff* of counsel), for respondents.

**OPINION OF THE COURT**

SWEENY, J.

These are four related appeals from orders deciding motions made in the litigation involving the AriZona Iced Tea business and its principal operating company, Beverage Marketing USA, Inc. (BMU). The first order denied plaintiff/petitioner John M. Ferolito's motion for a declaration that BMU's election to purchase his shares of stock was invalid. Ferolito also appeals from the denial of his motion to disqualify Cadwalader, Wickersham & Taft LLP (Cadwalader) as counsel to BMU and from the order dismissing a common-law derivative dissolution proceeding brought against defendants. Lastly, Ferolito appeals from the order denying his motion to compel BMU to make cash distributions of profits to all shareholders. A review of the factual and historical background of this litigation is necessary to place these appeals in their proper context.

In 1992, plaintiff Ferolito and defendant Vultaggio formed the AriZona Iced Tea business, consisting of 21 entities known as the "AriZona Entities." BMU, which conducts the preponderance of the business of producing, marketing and distributing the AriZona Iced Tea line of beverages, is one of those entities. All of the AriZona Entities are owned equally by Ferolito and Vultaggio, along with members of their respective families (Owners Groups).

In 1997, due to strained relations between Ferolito and Vultaggio, the parties agreed that Vultaggio would assume primary responsibility for the day-to-day management of the AriZona Entities. Ferolito retained his voting rights and, as co-owner of BMU, his right to participate in corporate decision-making.

In 1998, Ferolito, Vultaggio and their respective Owner Groups entered into an "Owners' Agreement." Its purpose was to set out the method of corporate governance, to maintain appropriate and businesslike relationships among the parties, and to assure the continuity of ownership and management of the AriZona Entities.

Section 3.1 of the Owners' Agreement provides that "all material matters respecting [the AriZona Entities] shall be resolved by mutual agreement of the [Owner Groups]." Section 2.1 provides that the general intent of the parties is that each Owner Group shall receive 50% of all distributions of profits. The Owners' Agreement also limits the sale or transfer of interest in the enterprise to "Permitted Transferees" (the Transfer Covenants).

In August 2008, the Ferolito Owners Group attempted to transfer a block of its shares in the AriZona Entities to an outside purchaser without Vultaggio's consent. Ferolito commenced litigation in New York County, seeking, among other things, nullification of the Transfer Covenants to allow him to sell those shares without restriction. Vultaggio asserted counterclaims and both sides moved for summary judgment. The motion court dismissed Ferolito's cause of action challenging the transfer restriction, finding that the Transfer Covenants were valid and enforceable, and we affirmed. The remaining causes of action for breach of contract, unjust enrichment, etc., are still pending (Main Action).

Ferolito also filed a separate action in Nassau County in which his personal corporation sued BMU for breach of a promissory note. This action was transferred to New York County and consolidated with the Main Action.

Thereafter, as part of the Main Action, Ferolito filed an amended petition pursuant to Business Corporation Law § 1104-a seeking a judicial dissolution of BMU, alleging that such dissolution was a necessary remedy given the provision in the Owners' Agreement barring him from selling his interests in BMU without Vultaggio's permission. He also alleged that Vultaggio's oppressive conduct was part of a fraudulent scheme to exclude him from the corporate affairs of the AriZona Entities and force him to sell his shares below their fair value. On this issue, Ferolito alleged that in February 2008, as part of a scheme to pressure him to sell his shares of BMU at a low price, Vultaggio ordered a unilateral termination of a long-standing practice of distributing the vast majority of BMU's annual profits to the shareholders. His request for relief included a "Final Order" compelling BMU to resume making distributions to each Owner Group consistent with past practice.

Ferolito's Business Corporation Law § 1104-a petition triggered buyout rights on the part of Vultaggio, who notified the court and all parties of his election, pursuant to Business Corporation Law § 1118, to have BMU purchase its shares owned by Ferolito. This election stayed the Main Action. Ferolito moved to invalidate the Business Corporation Law § 1118 election, arguing that section 3.1 of the Owners' Agreement precluded BMU from exercising its buyout rights without obtaining Ferolito's consent. Vultaggio opposed, arguing that the Owners' Agreement did not require Ferolito's consent, particularly in light of his filing of the dissolution petition.

Ferolito also moved for an order compelling the cash distribution of 60% of the AriZona Entities' net income for the year 2010. Vultaggio opposed the motion, arguing that the decision not to distribute profits was necessitated by Ferolito's actions. Additionally, he argued that the money would be necessary to purchase Ferolito's BMU shares as a result of the Business Corporation Law § 1118 election made in response to Ferolito's petition for judicial dissolution.

The motion court denied Ferolito's motion to invalidate BMU's election, finding that applying section 3.1 of the Owners' Agreement as advocated by Ferolito under these circumstances would render the statutory scheme of Business Corporation Law §§ 1104-a and 1118 a nullity. The court also determined that the application for the cash distributions was tantamount to a request for a preliminary injunction compelling distributions on an interim basis pending final resolution of the actions. Since Ferolito could not meet the requirements for such relief, and since he was requesting the same relief as in part of the Main Action, the motion was denied.

Ferolito's motion to disqualify Cadwalader also has its genesis in the commencement of litigation in 2008. At that time, BMU's general counsel and CEO analyzed the potential conflict issue regarding one firm's dual representation of BMU and Vultaggio. They determined that dual representation was desirable and retained Lou Solomon, Esq., who at the time was a member of Proskauer Rose, LLP, and the attorney for Vultaggio. Ferolito objected to this arrangement. Nonetheless, in 2008, BMU entered into a Joint Defense and Prosecution Agreement (JDPA) between Vultaggio and the AriZona Entities in which BMU consented to the dual representation and "waived any and all potential conflicts that may arise" during the course of the litigations. When Solomon left Proskauer and joined Cadwalader, he continued his representation of both Vultaggio and BMU.

Ferolito first moved for disqualification in the Main Action in April 2009, but withdrew the motion without prejudice. He also moved for disqualification in the Nassau County action in 2009, which motion was denied. He once again moved for disqualification in Nassau County in 2010 after filing the initial dissolution petition, but, before a decision was rendered, the action was consolidated with the Main Action. Counsel ultimately withdrew the pending motion.

On March 4, 2011, following BMU's election to buy his shares, Ferolito filed another motion for disqualification of Cadwalader,

citing alleged conflicts of interest. Cadwalader opposed, arguing that the JDPA resolved any potential conflicts. The motion court denied Ferolito's application.

To further complicate matters, on January 13, 2011, Ferolito and the John Ferolito, Jr. Grantor Trust filed a new action alleging direct and derivative claims for breach of fiduciary duty against Vultaggio on behalf of BMU (the 2011 Action). Following BMU's election to purchase Ferolito's stock, he amended the complaint to add an additional claim on behalf of the Ferolito Trust for common-law dissolution. This action was based on allegations of Vultaggio's waste and oppression, including officer/director misconduct.

Vultaggio moved to dismiss the complaint in its entirety. After a hearing, the court dismissed the Trust's common-law dissolution claim on the basis that it failed to state a cause of action and failed to demonstrate that Vultaggio was "looting" BMU, which the Trust admitted was a healthy, billion dollar company (*Ferolito v Vultaggio*, 2011 NY Slip Op 31700[U]). The court also granted a stay of the remaining counts in the 2011 action, finding that the direct and derivative breach of fiduciary duty claims and officer/director misconduct claim were substantially the same as those alleged in the Main Action.

## The BMU Dissolution/Election Order

Business Corporation Law § 1104-a gives holders of 20% or more of the outstanding voting shares of a close corporation the right to petition for judicial dissolution as a remedy for illegal, fraudulent or oppressive conduct (*see Fedele v Seybert*, 250 AD2d 519, 521-522 [1998]; *Matter of Public Relations Aids*, 109 AD2d 502, 507, 509 [1985]). However, pursuant to Business Corporation Law § 1118 (a), a petition alleging grounds specified in Business Corporation Law § 1104-a triggers the right of "any other shareholder or shareholders or the corporation" to "elect to purchase the shares owned by the petitioners at their fair value" (*see Fedele v Seybert*, 250 AD2d at 522; *Matter of Hung Yuk Ong*, 299 AD2d 173 [2002], *lv dismissed* 99 NY2d 610 [2003]). This election, once made, is irrevocable (*Matter of Chu v Sino Chemists*, 192 AD2d 315, 316 [1993]; *Matter of Doniger v Rye Psychiatric Hosp. Ctr.*, 122 AD2d 873 [1986], *lv denied* 68 NY2d 611 [1986]). Such an election "is superior to dissolution because it permits the continuation of the corporation's existence" (192 AD2d at 317; *Matter of Smith v Russo*, 230 AD2d 863, 864 [1996], *lv dismissed* 93 NY2d 848 [1999]). The buyout

election "accommodates the interests of the respective parties in ensuring the continued functioning of the business, while also protecting the financial interest of the shareholders and creditors" (*Matter of Public Relations Aids*, 109 AD2d at 508).

■ Ferolito does not contest Vultaggio's right to make such an election in his individual capacity. Rather, he argues that Vultaggio's unilateral election on behalf of BMU violated section 3.1 of the Owners' Agreement, which provides that "all material matters respecting [the AriZona Entities] shall be resolved by mutual agreement of the [Owner Groups]," and thus the election must be set aside. We find no merit to this position.

Generally, the terms of a shareholder agreement should be given effect (*Matter of Penepent Corp.*, 96 NY2d 186, 192 [2001]). Statutory dissolution and election rights may be restricted (but not nullified) by contract (*see Schimel v Berkun*, 264 AD2d 725, 728 [1999], *lv dismissed* 94 NY2d 797 [1999]; *Matter of Doniger*, 122 AD2d at 877). "[S]hareholders can agree in advance that an 1104-a dissolution proceeding will be deemed a voluntary offer to sell," as well as fix the "fair value" of the shares in the event of an 1118 election (*see Matter of Pace Photographers [Rosen]*, 71 NY2d 737, 747 [1988]; *Matter of Johnsen v ACP Distrib., Inc.*, 31 AD3d 172 [2006]). However, in the absence of an explicit agreement to that effect, a shareholder's agreement fixing the terms of a voluntary sale does not apply to limit Business Corporation Law § 1118 (a)'s "absolute" and "unconditioned" right to avoid dissolution by election, either by a shareholder or by the corporation itself (*Matter of Pace Photographers*, 71 NY2d at 744-745).

To adopt Ferolito's argument that a shareholder who commences a judicial dissolution proceeding can continue to assert management rights with respect to the corporation's right of election pursuant to Business Corporation Law § 1118 would thwart the statutory purpose of promoting the continuation of corporate enterprises. Absent an explicit agreement between the shareholders to limit the corporation's ability to exercise its statutory election right following the filing of a dissolution petition by one of its shareholders, the corporation may, without the consent of the petitioning shareholder, invoke its right of election pursuant to Business Corporation Law § 1118. Simply put, without an explicit and unequivocal agreement to the contrary, a shareholder who petitions for dissolution should not have the ability to veto the corporation's election right. To do so

would fly in the face of logic as well as the purposes of the statutory scheme enacted by the legislature (*see Matter of Public Relations Aids*, 109 AD2d at 509).

Here, while the Owners' Agreement provides a general mechanism for authorization of all BMU "material matters," neither the Owners' Agreement nor the company bylaws explicitly state that a mutual agreement requirement applies to the making of a corporate Business Corporation Law § 1118 election. Without such an explicit provision, a non-petitioning shareholder who has day-to-day management of the corporation may unilaterally exercise, on behalf of the corporation, the right to elect to buy-out the petitioning shareholder's shares (*Matter of Pace Photographers*, 71 NY2d at 747; *Matter of Johnsen*, 31 AD3d at 178). The court therefore properly denied Ferolito's motion.

## Disqualification of Counsel

Disqualification is a matter that rests within the sound discretion of the trial court (*see Harris v Sculco*, 86 AD3d 481, 481 [2011]).

> "When considering a motion to disqualify counsel, a trial court must consider the totality of the circumstances and carefully balance the right of a party to be represented by counsel of his or her choosing against the other party's right to be free from possible prejudice due to the questioned representation" (*Abselet v Satra Realty, LLC*, 85 AD3d 1406, 1407 [2011] [internal quotation marks omitted]).

While the Rules of Professional Conduct generally prohibit a lawyer from simultaneously representing clients with differing interests, an attorney may represent such clients where a disinterested lawyer would believe that the lawyer can competently represent the interest of each client and that each consents to the representation after full disclosure of the implications of simultaneous representation as well as the advantages and risks involved (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [b]; Code of Professional Responsibility DR 5-105 [c] [22 NYCRR 1200.24 (c)]; *Develop Don't Destroy Brooklyn v Empire State Dev. Corp.*, 31 AD3d 144, 151 [2006], *lv denied* 8 NY3d 802 [2007]; *Matter of Gustavo G.*, 9 AD3d 102 [2004]).

To the extent Vultaggio and BMU have any differing interests in connection with the decision of which party, if any, would exercise the Business Corporation Law § 1118 (a) election right, a disinterested lawyer could believe that dual representa-

tion would be appropriate. In these circumstances, where the non-petitioning shareholder runs the day-to-day operations of the corporation threatened with dissolution, any "differing interest" with respect to the Business Corporation Law § 1118 election does not necessarily require separate counsel. Moreover, Vultaggio and BMU validly consented to the dual representation, thereby waiving any potential conflict. It is thus not objectively unreasonable to believe that one law firm can adequately represent both BMU and Vultaggio under these circumstances. Accordingly, the court properly denied Ferolito's motion to disqualify counsel.

### Common-Law Dissolution

■ A claim for common-law dissolution is properly stated where it is alleged with sufficient factual detail that the shareholders in control have been looting the company's assets at the expense of the minority shareholders, "continuing the corporation's existence . . . for the sole purpose of benefitting those in control," and have sought "to force and coerce [the minority shareholders] to sell and sacrifice their holdings to those in control" (*see Leibert v Clapp*, 13 NY2d 313, 315-316 [1963] [internal quotation marks omitted]; *Gilbert v Hamilton*, 35 AD2d 715 [1970], *affd* 29 NY2d 842 [1971]). While the legislature supplemented this principle of judicially ordered equitable dissolution of a corporation by passing Business Corporation Law § 1104-a, it does not appear that it intended Business Corporation Law § 1104-a to be the exclusive remedy for aggrieved shareholders (*see Matter of Quail Aero Serv.*, 300 AD2d 800, 802 [2002]), and the courts continue to recognize the common-law cause of action (*see Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 69-70 [1984]; *Lemle v Lemle*, 92 AD3d 494 [2012]; *Matter of Dubonnet Scarfs*, 105 AD2d 339, 341 [1985]; *see also Collins v Telcoa Intl. Corp.*, 283 AD2d 128 [2001]; *Lewis v Jones*, 107 AD2d 931 [1985]).

■ Contrary to the motion court's finding, the allegations of fiduciary breaches by corporate management contained in the Ferolito Trust's cause of action are sufficient to state a claim for common-law dissolution. Furthermore, its timely filing subsequent to the filing of Ferolito's statutory dissolution petition did not prejudice BMU's election or Vultaggio's other rights. The fact that a corporation may be operating profitably is no bar to the grant of this type of relief in appropriate circumstances (*see Leibert*, 13 NY2d at 316). Moreover, the allegations of looting,

when combined with the other allegations of oppression relating to the interests of the Ferolito Trust, are sufficient at this point in the litigation to state a claim for common-law dissolution (*see Lewis*, 107 AD2d at 932). Accordingly, that cause of action is reinstated.

■ The motion court, however, did not improperly stay the causes of action for direct and derivative claims for breach of fiduciary duty as well as the derivative claim for officer/director misconduct in deference to the Main Action based on the finding that the relief sought in both actions was substantially the same. Where a party's non-dissolution claims, direct or derivative, and a Business Corporation Law § 1118 valuation proceeding are "inextricably intertwined," we have ordered them to proceed in tandem before the same court, since the resolution of the non-dissolution claims may affect the "fair value" to be determined in the valuation proceeding (*see Edmonds v Amnews Corp.*, 224 AD2d 358, 358 [1996]).

## Shareholder Distributions Claim

■ The court properly denied Ferolito's motion to compel distributions of profit to the shareholders. The court correctly found that issues of fact precluded the grant of Ferolito's prior motion for summary judgment on a breach of contract claim alleging damages as a result of Vultaggio's preventing him from participating in management decisions, including decisions involving the timing and amount of shareholder distributions. Ferolito's motion therefore violated the rule against successive summary judgment motions (*see Hoffeld v Lindholm*, 85 AD3d 635 [2011]; *Jones v 636 Holding Corp.*, 73 AD3d 409 [2010]), and denial would be appropriate due to the remaining issues of material fact.

Accordingly, the order of the Supreme Court, New York County (Martin Shulman, J.), entered June 2, 2011, which denied petitioner John M. Ferolito's motion for an order declaring invalid BMU's Business Corporation Law § 1118 election to purchase his shares, should be affirmed, with costs. The order, same court and Justice, entered June 3, 2011, which denied Ferolito's motion to disqualify Cadwalader, Wickersham & Taft LLP as counsel to BMU in the consolidated dissolution/valuation proceeding, should be affirmed, with costs. The order, same court and Justice, entered June 24, 2011, which, insofar as appealed from, granted defendant Vultaggio's motion to dismiss the Ferolito Trust's cause of action for common-law dissolution,

and to stay the remaining causes of action should be modified, on the law, to deny the motion as to the common-law dissolution cause of action, the cause of action reinstated, and otherwise affirmed, without costs. The order, same court and Justice, entered April 14, 2011, which denied Ferolito's motion to compel shareholder distributions of profits, should be affirmed, with costs.

GONZALEZ, P.J., SAXE, ACOSTA and RENWICK, JJ., concur.

Order, Supreme Court, New York County, entered June 2, 2011, affirmed, with costs. Order, same court and Justice, entered June 3, 2011, affirmed, with costs. Order, same court and Justice, entered June 24, 2011, modified, on the law, to deny the motion as to the common-law dissolution cause of action, the cause of action reinstated, and otherwise affirmed, without costs, and order, same court and Justice, entered April 14, 2011, affirmed, with costs.