Matter of Wyandanch Union Free Sch. Dist. v Town of Babylon Indus. Dev. Agency (2026 NY Slip Op 00252)

Matter of Wyandanch Union Free Sch. Dist. v Town of Babylon Indus. Dev. Agency

2026 NY Slip Op 00252

Decided on January 21, 2026

Appellate Division, Second Department

Duffy, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 21, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
VALERIE BRATHWAITE NELSON
BARRY E. WARHIT
JANICE A. TAYLOR, JJ.

2021-03315
 (Index No. 609647/20)

[*1]Matter of Wyandanch Union Free School District, et al., appellants 
vTown of Babylon Industrial Development Agency, et al., respondents.

APPEAL by the petitioners, in a proceeding pursuant to CPLR article 78 to review a resolution of the Town of Babylon Industrial Development Agency dated February 26, 2020, which, after a hearing, granted certain financial assistance to the respondent WR Communities-D, LLC, under the New York State Industrial Development Agency Act, from a judgment of the Supreme Court (Carmen Victoria St. George, J.), entered March 30, 2021, in Suffolk County. The judgment denied the petition and dismissed the proceeding.

Guercio & Guercio, LLP, Farmingdale, NY (Christopher W. Shishko of counsel), for appellants.
William D. Wexler, North Babylon, NY (Kevin G. Snover of counsel), for respondent Town of Babylon Industrial Development Agency.
Albanese & Albanese LLP, Garden City, NY (Diana C. Prevete of counsel), for respondents Albanese Development Corporation and WR Communities-D, LLC.

DUFFY, J.P.

OPINION & ORDER
The issue on appeal, an issue of first impression for this Court, is whether the respondent Town of Babylon Industrial Development Agency (hereinafter the Babylon IDA) operated within its statutory authority pursuant to the New York State Industrial Development Agency Act (hereinafter the Act) (article 18-A of the General Municipal Law) when it adopted a resolution dated February 26, 2020, determining that a planned affordable senior housing project is included in the type of projects eligible for certain financial assistance and benefits under the Act (hereinafter the February 2020 resolution). The petitioners appeal from a judgment of the Supreme Court entered March 30, 2021, denying a petition pursuant to CPLR article 78 to review the resolution and dismissing the proceeding. As set forth below, we affirm on the ground that the court properly determined that the Babylon IDA operated within its statutory authority in granting financial assistance pursuant to the Act. Contrary to the petitioners' contention, the determination by the Babylon IDA that a plan to construct affordable senior housing constitutes a "project" as defined in General Municipal Law § 854(4) entitled to financial assistance and benefits under the Act because, among other things, the proposed construction will promote employment opportunities and combat economic deterioration, was rationally based and neither arbitrary and capricious or an abuse of discretion, nor affected by an error of law. The interpretation by the Babylon IDA of the relevant language of the Act comports with the plain meaning of the text contained in the Act as well as the legislative intent of the Act and related authority.
I. Background of the Proceeding
As is relevant to this appeal, in July 2020, the petitioners, Wyandanch Union Free School District, Wyandanch Union Free School District Board of Education, and James Crawford, individually and as President of the Board of Education of the Wyandanch Union Free School District, commenced this proceeding pursuant to CPLR article 78 against the Babylon IDA, the respondent Albanese Development Corporation (hereinafter the Development Corp.), and an affiliate of the Development Corp., the respondent WR Communities-D, LLC (hereinafter the LLC), to review the February 2020 resolution. The February 2020 resolution, after a hearing, determined that the LLC's plan to construct an affordable senior housing project in the hamlet of Wyandanch, within an area served by the Babylon IDA in the Town of Babylon (hereinafter the senior housing project), constituted a "project" under the Act and approved the LLC's application for certain financial assistance under the Act.
Prior to adopting the February 2020 resolution, in February 2020, the Babylon IDA held a public hearing on its proposed plan to grant the requested financial assistance—a 30-year abatement from real property tax and certain exemptions from New York State and local sales and use tax and mortgage recording tax—to the LLC with respect to the senior housing project. After the hearing, the Babylon IDA approved the February 2020 resolution authorizing the real property tax abatement and the other tax exemptions to the LLC in connection with the senior housing project. The Babylon IDA determined, inter alia, that the planned construction of the senior housing project constituted a "project" within the meaning of the Act since the senior housing project would promote job opportunities and economic welfare, the Town was in need of affordable senior housing, and the senior housing project was part of a larger project aimed at the revitalization of an urban renewal area in Wyandanch and involved an economically distressed area (see General Municipal Law § 854[4]).
II. Procedural History
Thereafter, the petitioners commenced this proceeding pursuant to CPLR article 78 to review the February 2020 resolution. The petitioners contended that providing tax benefits pursuant to the Act for planned construction projects such as the one at issue here—affordable senior housing—is prohibited by the Act and that the Babylon IDA acted outside of its authority by granting financial assistance to the LLC for the senior housing project. In opposition, the Babylon IDA argued that the February 2020 resolution was not arbitrary and capricious or affected by an error of law because the senior housing project was a "commercial" project under the Act and eligible for financial assistance since the Babylon IDA had determined that the senior housing project would promote employment opportunities and improve economic welfare. The LLC and the Development Corp. separately opposed the petition, contending, among other things, that if the Babylon IDA were to withdraw its assistance, the LLC would have to abandon the senior housing project. The LLC and the Development Corp. contended that it no longer would be economically viable to charge affordable rents for the anticipated residents of the senior housing project, that the grant of financial assistance to the LLC for the senior housing project is authorized by the Act, and that the LLC acquired a vested right to the financial assistance granted to it by the February 2020 resolution since the LLC had already completed substantial construction and incurred significant expenses with respect to the senior housing project.
In reply, the petitioners contended, among other things, that, since financial assistance was not properly granted, the LLC could not have acquired a vested right in such assistance.
In a judgment entered March 30, 2021, the Supreme Court denied the petition and dismissed the proceeding. The court determined, inter alia, that the February 2020 resolution authorizing and granting to the LLC certain financial assistance pursuant to the Act was not arbitrary, capricious, or affected by an error of law. The petitioners appeal. For the reasons that follow, we affirm.
III. The Relevant Law
A. Standard of Review
In reviewing a determination of an administrative agency not made after a quasi-judicial hearing, the court's inquiry is limited to whether the determination is arbitrary and capricious or without a rational basis in the record and a reasonable basis in the law (see CPLR 7803[3]; Matter of Classic Realty v New York State Div. of Hous. & Community Renewal, 2 NY3d 142; Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222; Matter of McCollum v City of New York, 184 AD3d 838, 839-840; Matter of Claudia E. v Ryan, 61 AD3d 865).
"An agency's interpretation of the statutes and regulations that it administers is entitled to deference, and must be upheld if reasonable" (Matter of Sternberg v New York State Off. for People with Dev. Disabilities, 204 AD3d 680, 682 [internal quotation marks omitted]; see Matter of 96 Wythe Acquisition, LLC v Jiha, 165 AD3d 1100, 1101; Matter of Nearpass v Seneca County Indus. Dev. Agency, 152 AD3d 1192, 1194 [agency's determination entitled to "great deference, and must be upheld as long as it is reasonable"]). The agency's determination need only be supported by a rational basis (see Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189). However, "an administrative determination is arbitrary and capricious when it exceeds the agency's statutory authority or is made in violation of the Constitution or laws of this State" (Matter of Jennings v Commissioner, N.Y.S. Dept. of Social Servs., 71 AD3d 98, 108 [alteration and internal quotation marks omitted]; see Matter of Lozada v Elmont Hook & Ladder Co. No. 1, 151 AD3d 860, 861; Matter of Lilakos v Environmental Control Bd., 148 AD3d 893, 895).
If the agency's determination is rationally based, a reviewing court may not substitute its judgment for that of the agency even if the court might have decided the matter differently (see Matter of Savetsky v Board of Zoning Appeals of Town of Southampton, 5 AD3d 779, 780; Matter of Calvi v Zoning Bd. of Appeals of City of Yonkers, 238 AD2d 417, 418). It is not for a reviewing court to weigh the evidence or reject the choice made by the agency where the evidence conflicts and room for choice exists (see Matter of Toys "R" Us v Silva, 89 NY2d 411, 424; Akpan v Koch, 75 NY2d 561, 570-571; Matter of Calvi v Zoning Bd. of Appeals of City of Yonkers, 238 AD2d at 418).
B. Article 18-A
Article 18-A of the General Municipal Law governs the authorization of the New York State Legislature to create industrial development agencies with the purpose of preventing unemployment and economic deterioration.
C. General Municipal Law § 858
Pursuant to General Municipal Law § 858, the purpose of an industrial development agency (hereinafter IDA)
"shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research, renewable energy and recreation facilities including . . . continuing care retirement communities, . . . and thereby advance the job opportunities, health, general prosperity and economic welfare of the people of the state of New York and to improve their recreation opportunities, prosperity and standard of living" (emphasis added).
D. General Municipal Law § 852
General Municipal Law § 852 provides, in relevant part:
"It is hereby declared to be the policy of this state to promote the economic welfare, recreation opportunities and prosperity of its inhabitants and to actively promote, attract, encourage and develop recreation, economically sound commerce and industry and economically sound projects . . . through governmental action for the purpose of preventing unemployment and economic deterioration" (emphasis added).
E. General Municipal Law § 854(4)
Pursuant to General Municipal Law § 854(4),
"'Project' - shall mean any land, any building or other improvement, and all real and personal properties located within the state of New York and within or outside or partially within and partially outside the municipality for whose benefit the agency was created, including, but not limited to, machinery, equipment and other facilities deemed necessary or desirable in connection therewith, or incidental thereto, whether or not now in existence or under construction, which shall be suitable for manufacturing, warehousing, research, commercial, renewable energy or industrial purposes or other economically sound purposes" (emphasis added).
Thus, the Babylon IDA, a government entity tasked with the purpose of "advanc[ing] . . . job opportunities, health, general prosperity and economic welfare" (id. § 858), was created for the purpose of preventing unemployment and economic deterioration through the promotion of projects, which include, but are not limited to, facilities suitable for economically sound purposes (see id. §§ 852, 854[4]; 858) and to "provide one means for communities to attract new industry, encourage plant modernization and create new job opportunities" (Governor's Mem approving L 1969, ch 1030, McKinney's Sess Laws of NY at 2572).
We find that, contrary to the petitioners' contentions, the plain language contained in General Municipal Law §§ 852 and 854(4) allows the Babylon IDA to treat the senior housing project as a project eligible for certain financial assistance where the record demonstrates that one of the goals of the senior housing project is to promote employment opportunities and to combat economic deterioration in the area served by the Babylon IDA.
IV. Statutory Interpretation
A. Plain Language
In matters of statutory interpretation, the primary consideration is to discern and give effect to the Legislature's intent (see Matter of Jun Wang v James, 40 NY3d 497, 502; Yatauro v Mangano, 17 NY3d 420, 426). "'As the clearest indicator of legislative intent is the statutory text, the starting point in any case of [statutory] interpretation must always be the language [of the statute] itself, giving effect to the plain meaning thereof'" (Matter of Jun Wang v James, 40 NY3d at 502-503, quoting People ex rel. E.S. v Superintendent, Livingston Corr. Facility, 40 NY3d 230, 235; see Yatauro v Mangano, 17 NY3d at 426). "Inasmuch as the text of a statute is the clearest indicator of such legislative intent, where the disputed language is unambiguous, [courts] are bound to give effect to its plain meaning" (Makinen v City of New York, 30 NY3d 81, 85 [alteration and internal quotation marks omitted]). "[T]he text of a provision 'is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning'" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120, quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660; see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583). "When the plain language of the statute is precise and unambiguous, it is determinative" (Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 565; see Loehr v New York State Unified Ct. Sys., 150 AD3d 716, 720).
Here, as set forth in General Municipal Law § 854(4), the plain language of the statute broadly defines "project" to include, in relevant part, "any land, any building or other improvement, . . . for whose benefit the agency was created, including, but not limited to . . . other economically sound purposes."
The petitioners' contention that the senior housing project is incompatible with the Act's definition of "project" on the ground that the Act does not expressly list construction of residential buildings as a project suitable for financial assistance under the Act ignores the expansive language in the provision "including, but not limited to" (id.). Contrary to the petitioners' contention, the maxim "expressio unius est exclusio alterius,"[FN1] is inapplicable to interpreting a provision such as the one at issue here, which expressly provides for a list of unnamed additional inclusions (see Matter of Cahill v Rosa, 89 NY2d 14, 21 [where a statute contains the phrase "shall include," such language is "broad and inclusive" and the "statutory list that follows it is illustrative, not specific" so the maxim is inapplicable]; Hartman v Goldman, 84 AD3d 734, 736 [where a statute contains the phrase "including, but not limited to" such language does not limit the statute to those terms "expressly listed in the statute"]). Here, the plain and unambiguous language of the provision "including, but not limited to" expressly provides and anticipates that the listed examples would not be exhaustive and is inapposite to those situations where the maxim expressio unius est exclusio alterius is applied to interpret ambiguous statutory language (General Municipal Law § 854[4]; see Red Hook Cold Stor. Co. v Department of Labor of State of N.Y., 295 NY 1, 8 [statutory language of "including" means that the Legislature "intended to broaden, not narrow, the concept of 'a factory' and that the list of operations (of a factory) which follows was not intended for purposes of precise itemization"]; Hartman v Goldman, 84 AD3d at 736 [where RPAPL 543 provides a list of permitted de minimis, non-structural encroachments and contains the language: "including, but not limited to," driveway lights, though not expressly listed, are included]).
Although expressio unius est exclusio alterius may be a useful principle for the interpretation of some statutes, its function is not to negate statutory text that is clear and unambiguous. Rather, it operates as an "interpretive maxim" where the statutory language is ambiguous (see Colon v Martin, 35 NY3d 75, 78 [the principle is "an interpretive maxim that the [*2]inclusion of a particular thing in a statute implies an intent to exclude other things not included" (emphasis added; internal quotation marks omitted)]).
With respect to the definition of "project" under the Act, although the Act enumerates the types of activities covered under the term, the text plainly provides that "project," in addition to those items listed, "includ[es], but [is] not limited to" other things and that the term "project" is inclusive of non-listed activities which have been targeted for "other economically sound purposes" (General Municipal Law § 854[4]).
Indeed, the statutory language "including, but not limited to" negates any inference of exclusion, since, "[t]he word 'including,' when followed by a list of examples, is designed to broaden the concept being defined" (Matter of Doniger v Rye Psychiatric Hosp. Ctr., 122 AD2d 873, 877). Here, the language of the Act is unambiguous and clear on its face where it defines a "project" pursuant to the Act as "including, but not limited to" a variety of concerns, including those that are for "other economically sound purposes" (General Municipal Law § 854[4]; see Matter of Doniger v Rye Psychiatric Hosp. Ctr., 122 AD2d at 877).
Since the language of the Act is plain and unambiguous, it is unnecessary to consider its legislative history (see Nadkos, Inc v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 5). Nonetheless, as set forth herein, the history underpinning the creation of the Act further supports the conclusion that the Babylon IDA's interpretation of the term "project" within the Act to include its plan to construct affordable senior housing is rationally based.
B. Legislative History
In 1969, the New York State Legislature approved Laws of 1969, chapter 1030, which, at the time of its enactment, provided that the general purpose of the Act was to "promote the economic welfare of [New York State's] inhabitants and to actively promote, attract, encourage and develop economically sound commerce and industry through governmental action for the purpose of preventing unemployment and economic deterioration" (L 1969, ch 1030). In approving chapter 1030 of the Laws of 1969, then-Governor Nelson D. Rockefeller issued a memorandum to the New York State Legislature and noted that "industrial development agencies provide one means for communities to attract new industry, encourage plant modernization and create new job opportunities" (Governor's Mem approving L 1969, ch 1030, McKinney's Sess Laws of NY at 2572).
The petitioners' contention that the Legislature's intent to exclude a senior housing project such as this one from projects eligible to receive financial assistance is evinced by the Legislature's failure to add an amendment to the Act adding residential buildings to the definition of "project" under General Municipal Law § 854(4) conflates, without support, legislative inaction with an intent to exclude. The petitioners did not submit any evidence evincing an affirmative intent by the Legislature to exclude a senior housing project such as this one from the definition of a "project" under General Municipal Law § 854(4).
Even though the language of the Act does not specify that an affordable senior housing project such as the one at issue here is included in the types of projects eligible for financial assistance, the Babylon IDA's interpretation of the term "project" to include construction of affordable senior housing supports the legislative intent to effectuate the general purpose of the legislation, which was to "prevent[ ] unemployment and economic deterioration" (L 1969, ch 1030). Given that the intended purpose of the Act is to "provide one means for communities to attract new industry, encourage plant modernization and create new job opportunities," if, as here, the Babylon IDA has determined that a project, residential or otherwise, will "prevent[ ] unemployment and economic deterioration," it is within the Babylon IDA's discretion to find that such a project effectuates the legislative intent of the Act (General Municipal Law § 852; see Governor's Mem approving L 1969, ch 1030, McKinney's Sess Laws of NY at 2572).
An advisory opinion issued by the New York State Comptroller in 1985, in response to an inquiry by the Village of Port Chester as to whether construction of an apartment complex is an eligible project within the meaning of the General Municipal Law § 854(4) and thereby a proper project for financial assistance from the Industrial Development Agency of the Village of Port Chester (hereinafter the Port Chester IDA) also supports this determination. As here, the issue there was whether the construction of affordable housing which advances job opportunities and prevents economic deterioration constitutes a commercial activity within the meaning of the Act and is thus a proper project for financial assistance from the Port Chester IDA (see 1985 Ops St Comp No. 85-51). The Comptroller opined that, pursuant to the stated purpose of the Act, "an essential element of any valid commercial activity appears to be the promotion of employment opportunities and the [*3]prevention of economic deterioration in an area for whose benefit the industrial development agency was created" (id.). Thus, the primary consideration in determining whether a proposed project is eligible for financial assistance pursuant to the Act is not whether a project is residential, but rather, after consideration by local officials of facts relevant to the project, whether such a project is a commercial activity within the meaning of the Act; that is, whether the proposed project promotes employment opportunities and prevents economic deterioration (see id.).
Here, in granting the requested financial assistance to the LLC for the senior housing project, the Babylon IDA found, among other things, that the planned construction would promote job opportunities and prevent economic deterioration, that the senior housing project constitutes a part of a larger revitalization project of an economically distressed area in the Town, and that the Town is in need of affordable senior housing as a part of this larger project. Such findings place the senior housing project directly within the ambit of a "project" contemplated by the Act.
C. Related Authority
This conclusion as to the legislative intent and the plain meaning of the Act is supported by and consistent with related decisions in our sister courts. In Nearpass v Seneca County Indus. Dev. Agency (152 AD3d 1192), the Appellate Division, Fourth Department, upheld a determination of the Seneca County Industrial Development Agency (hereinafter the Seneca IDA) that construction of a casino was eligible for financial assistance, despite casinos not explicitly being listed as a "project" in the Act (see id. at 1193). The Fourth Department found that even though the statutory language of the Act did not include "casino" in the types of projects described in the Act, the Seneca IDA's determination that a casino qualified as a "project" eligible for financial assistance was entitled to "great deference, and must be upheld [if] reasonable" (id. at 1194 [internal quotation marks omitted]). The Fourth Department concluded that the record demonstrated that the Seneca IDA had an "adequate and rational basis" for its determination since the record showed that the Seneca IDA's determination that the express purpose of the Act, to "actively promote, attract, encourage and develop recreation, economically sound commerce and industry," was furthered by providing financial assistance for the casino (id.).
Although the Fourth Department in Nearpass determined, unlike this Court, that the language of General Municipal Law § 854(4) was "ambiguous" as to the application of the term "project" to a casino (Matter of Nearpass v Seneca County Indus. Dev. Agency,152 AD3d at 1194), the decision is nonetheless instructive for its conclusion that, where an IDA, after examining relevant facts as to a proposed project, determines that a proposed project promotes the express purpose of the Act, such a determination is rationally based and will be upheld by a court (see id.).
The Appellate Division, Third Department similarly addressed the scope of the definition of "project" under the Act, albeit on the narrow issue of whether railcars used in the operation of a salt mine were an integral part of a salt mine "project" (see Matter of American Rock Salt Co. LLC v Commissioner of Taxation & Fin. of the State of N.Y., 104 AD3d 12, 14-15) The Third Department analyzed the plain meaning of the Act and found that the definition of "project" pursuant to the General Municipal Law § 854(4) was broad enough to include railcars, as the Act provides, in part, that "project" includes "'any land, any building or other improvement . . . including, but not limited to'" machinery and equipment (Matter of American Rock Salt Co. LLC v Commissioner of Taxation & Fin. of the State of N.Y., 104 AD3d at 14, quoting General Municipal Law § 854[4]).
Both the Fourth Department's conclusion, that an IDA determination that a proposed project promotes the express purpose of the Act was rationally based, and the Third Department's plain language analysis of the Act, support our conclusion that the Supreme Court properly determined that the Babylon IDA's interpretation of the statutory language, that the senior housing project constitutes a "project" within the ambit of the Act, was rational. Here, much like the analyses applied by the IDAs in both American Rock Salt Co. (104 AD3d at 14-15) and Nearpass (152 AD3d at 1194), the Babylon IDA determined that the senior housing project will promote employment opportunities and prevent economic deterioration.
V. Nisi Prius
In Triple S Realty Corp. v Village of Port Chester (Sup Ct, Westchester County, Aug. 20, 1987, Walsh, J., index No. 22355/86), the Supreme Court, Westchester County, also addressed the specific issue of whether proposed construction of residential buildings can qualify as a "project" eligible for financial assistance pursuant to the Act. Certain defendants in that action, including the Village of Port Chester, moved, inter alia, for summary judgment dismissing the complaint, which sought to invalidate specified portions of an agreement related to the development of certain areas [*4]of the Village. The court granted that branch of those defendants' motion which was for summary judgment dismissing the complaint. According to the court, "[i]f it is determined that residential construction would increase employment opportunities and prevent economic deterioration in the area served by the [Port Chester] IDA, such construction may be a proper project for industrial development bond financing" (id., slip op at 10). The court's determination that the eligibility of a proposed project for financial assistance rests on a determination that the plan promotes employment opportunities and prevents economic deterioration echoes both the legislative intent and stated purpose of the Act (see General Municipal Law § 858; Triple S Realty Corp. v Village of Port Chester, slip op at 10).
More recently, in Matter of Ryan v Town of Hempstead Ind. Dev. Agency (Sup Ct, Nassau County, Jan. 27, 2017, Brown, J., index No. 5324/16), the Supreme Court, Nassau County, addressed a challenge by the petitioners in that proceeding pursuant to CPLR article 78 to the authority of the Town of Hempstead Industrial Development Agency (hereinafter the Hempstead IDA) to determine that the construction of a 336-unit residential apartment complex constituted an eligible "project" as defined in the Act. The court denied the petition and dismissed the proceeding (see Matter of Ryan v Town of Hempstead Ind. Dev. Agency, slip op at 6). The court upheld as rational the determination of the Hempstead IDA that the residential apartment complex at issue was eligible for financial assistance pursuant to the Act. The court found that where a project "promotes employment opportunities and serves to combat economic deterioration in an area served by an [IDA], a finding that the project falls within the ambit of the IDA is rationally based" (id.). In reaching its decision, the court analyzed the statutory definition of the term "project" pursuant to General Municipal Law § 854(4) and examined the legislative intent of the Act. The court determined that the Hempstead IDA acted within its discretion in finding that the proposed construction project was a "project" within the meaning of the Act (see Matter of Ryan v Town of Hempstead Ind. Dev. Agency, slip op at 3-4).
These nisi prius determinations support our conclusion that the determination by the Babylon IDA that construction of the senior housing project is a "project" within the meaning of the Act where that senior housing project promotes employment opportunities and combats economic deterioration, is rationally based and is not arbitrary and capricious, an error of law, or an abuse of discretion.
Here, the record establishes that the Babylon IDA, in adopting the February 2020 resolution following a public hearing, and after review of the application submitted by the LLC, a report on the environmental effects of the senior housing project, a regional economic development council report, and an economist's report, acted within its jurisdiction and not beyond the scope of its authority; thus, its determination was not arbitrary and capricious or an abuse of discretion. Nor was the Babylon IDA's adoption, after review of all of the circumstances, of the February 2020 resolution finding that the construction of the senior housing project constituted a "project" under the Act affected by an error of law so as to warrant relief under CPLR article 78.
VI. Remaining Contentions
The parties' remaining contentions are without merit or need not be reached in light of our determination.
VII. Conclusion
Based on the plain language of General Municipal Law § 854(4), the legislative intent of the Act, and related authority, the Babylon IDA's adoption of the February 2020 resolution determining that construction of the senior housing project constituted a "project" under the Act eligible for financial assistance from the Babylon IDA—based on its determination that the proposed plan will promote job opportunities and prevent economic deterioration—was rational and not arbitrary and capricious or affected by an error of law.
Thus, the judgment of the Supreme Court, denying the petition and dismissing the proceeding, is affirmed.
BRATHWAITE NELSON, WARHIT and TAYLOR, JJ., concur.
ORDERED that the judgment is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: The Latin phrase is typically translated to mean that, in matters of statutory construction, where a law expressly describes a particular act, thing, or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded (see Matter of Benjamin v New York City Empl. Retirement Sys., 170 AD3d 714, 716, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240).